United States District Court
Southern District of Texas
**ENTERED**
September 28, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DR. JOHN DOE, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:20-CV-3200 |
| | § | |
| UNIVERSITY OF TEXAS HEALTH | § | |
| SCIENCE CENTER AT HOUSTON, | § | |
| *et al.*, | § | |
| | § | |
| **Defendants.** | | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the Court[1] are Defendants Dr. Margaret McNeese, Dr. Sheela Lahoti, Deana Moylan, and Tiffany Obeng's (collectively, "the individual Defendants") Motion to Dismiss and Defendant University of Texas Health Science Center at Houston's ("UTHealth") Amended Motion to Dismiss.[2] The Court has considered the motions, all other relevant filings, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that the individual Defendants' Motion to Dismiss (Dkt. No. 29) be **GRANTED**, UTHealth's Amended Motion to Dismiss (Dkt. No. 30) be **GRANTED**, and the case be **DISMISSED WITH PREJUDICE**.[3]

I.    **BACKGROUND**

a.    UTHealth

---

[1] These motions were referred to the Undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. (*See* Dkt. No. 7; Dkt. Entry dated March 16, 2021.)

[2] Dkt. Nos. 29–30.

[3] Pending before the Court is also UTHealth's original Motion to Dismiss (Dkt. No. 28) that is identical to its Amended Motion to Dismiss (Dkt. No. 30). The Court **RECOMMENDS** that UTHealth's original Motion to Dismiss be **DENIED AS MOOT**. (Dkt. No. 28.)

Plaintiff earned his M.D. from McGovern Medical School at UTHealth where he was a student from 2015 to 2020.[4] While a student, Plaintiff was reviewed by the school's Student Evaluations and Promotions Committee ("SEPC") on two separate occasions.[5] SEPC is "the representative body of the faculty-at-large" and one of their responsibilities is to assess students who engage "in conduct that calls into question his/her suitability to practice or study medicine or whose performance is otherwise unsatisfactory."[6]

In March 2017, Plaintiff appeared before SEPC due to "concerns about professionalism in his interactions with faculty and medical student peers."[7] SEPC decided Plaintiff could continue his education as long as he underwent an administrative psychiatric evaluation and complied with any recommended treatment.[8] In December 2019, Plaintiff appeared before SEPC again due to "new concerns of professionalism in his interactions with staff and faculty."[9] SEPC decided that Plaintiff could continue his education, but recommended that he obtain professionalism training.[10]

Near the end of medical school, students participate in the National Resident Matching Program where students apply to residency programs. As part of this Match process, UTHealth prepares Medical Student Performance Evaluation ("MSPE") letters for each student and provides a letter to each residency program that a particular student applies to.[11] In accordance with the Match Participation Agreement for Medical Schools, UTHealth is required to provide a full

---

[4] Dkt. No. 2 at 4, 30.
[5] *Id.* at 5, 18; Dkt. No. 30-1 at 2.
[6] Dkt. No. 30-1 at 25–26.
[7] *Id.* at 3.
[8] *Id.* at 14.
[9] *Id.* at 2.
[10] *Id.* at 16.
[11] *Id.* at 96.

overview of the student's qualifications and must update it as necessary:

> All information that a medical school reports about its students and graduates during the application, interview, and/or matching processes, shall be complete, timely, and accurate. Information reported in the Medical Student Performance Evaluation (MSPE) that is false, misleading, incomplete, or not up-to-date is a violation of this Agreement. For example, the omission of information that would reasonably be considered pertinent to a program's decision whether to rank an applicant, to determine an applicant's ability to satisfy program requirements or standards, or to identify circumstances that may reasonably be expected to delay or affect adversely the applicant's medical school graduation or current training date, licensure status, visa status, or ability to start the training program shall be considered a violation of this Agreement. A medical school shall amend or attach an addendum to a student or graduate MSPE if the school has actual knowledge the MSPE, as written, no longer is accurate.[12]

As a result of UTHealth's contractual obligations, the school advised Plaintiff that an addendum would be added to his MSPE letter regarding his SEPC evaluations.[13] Plaintiff had two addendums added at the beginning of his MSPE letter. The December 18, 2019 addendum stated:

> After having appeared before the Student Evaluations and Promotions Committed (SEPC) for concerns of professionalism in March of 2017 and being allowed to continue in the program, Mr. [Doe] appeared before the SEPC again in December of 2019 for new concerns of professional in his interactions with staff and faculty. The SEPC allowed Mr. [Doe] to continue in the program and strongly encouraged him to engage in professionalism training.[14]

The January 6, 2020 addendum stated:

> On January 6, 2020, Mr. [Doe] appealed the proceedings of the SEPC's meeting in December 2019. Pursuant to policy, this appeal was made to the UTHealth President. Based on the review, it was the decision of the President to uphold the SEPC's determination that Mr. [Doe] would continue in the program. No adverse actions

---

[12] *Id.* at 78.
[13] *Id.* at 16–17.
[14] *Id.* at 2.

were taken by the University as a result of Mr. [Doe]'s appearance
at the SEPC.[15]

While the January addendum stated no adverse actions were taken, this was contradicted

by a later section in the letter that asked "Recipient of any adverse action(s) by the medical school

or its parent institution?" and the answer said "Yes (see below)."[16] The letter then reiterated that

Plaintiff appeared before the SEPC in March 2017 and that Plaintiff was allowed to continue in

the program.[17] It is unclear why this section made it seem as if Plaintiff received adverse action by

UTHealth when the letter also made clear that no adverse action was taken against Plaintiff and he

was allowed to continue his education. Plaintiff learned on January 15, 2020 that he did not match

with a residency program.[18]

b. The Individual Defendants

Plaintiff's claims against the individual Defendants stem from a Title IX complaint he made

while a student at UTHealth. Plaintiff alleges he was sexually harassed and bullied by a fellow

medical student from 2016 to 2019.[19] Plaintiff states he complained to UTHealth's Office of

Admissions and Student Affairs ("OASA"), but that OASA did not open an investigation.[20]

Plaintiff also explains that this medical student reported him for eating almonds that were left in

an office, which led to Plaintiff's first review by SEPC in March 2017.[21]

In March 2019, Plaintiff made a Title IX complaint regarding the sexual harassment by his

_____

[15] *Id.*
[16] *Id.* at 3.
[17] *Id.*
[18] Dkt. No. 2 at 27.
[19] *Id.* at 5.
[20] *Id.*
[21] *Id.*

fellow medical student.[22] Plaintiff met with OASA staff members and UTHealth employees including Defendants Dr. McNeese and Dr. Lahoti.[23] Defendant Dr. McNeese is UTHealth's Vice Dean for Admissions and Student Affairs and Title IX coordinator.[24] Defendant Dr. Lahoti is UTHealth's Associate Dean for Admissions and Student Affairs.[25] After meeting with Plaintiff, various employees began making complaints to the University of Texas Police at Houston Department that they felt uncomfortable and threatened by Plaintiff.[26]

On July 9, 2019, Plaintiff provided a written complaint about his sexual harassment to Defendant Moylan, the "ranking administrator over Diversity and Equal Opportunity."[27] On July 12, 2019, Plaintiff met with Defendant Obeng, a Senior Equal Opportunity Advisor, regarding his complaint.[28] On October 29, 2019, Plaintiff reviewed the findings of his Title IX complaint with Defendant Moylan.[29] Plaintiff states that his second SEPC review was initiated after his meeting with Defendant Moylan.[30]

c.  Procedural History

Plaintiff filed this action against UTHealth and the individual Defendants on September 15, 2020.[31] Against UTHealth, Plaintiff alleges Title IX claims, a breach of contract claim, and a

---

[22] *Id.* at 6.
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.* at 7–8, 13, 23.
[27] *Id.* at 11.
[28] *Id.* at 11–12.
[29] *Id.* at 18.
[30] *Id.*
[31] *See id.* at 1.

First Amendment claim.[32] Against the individual Defendants, Plaintiff alleges §1983 claims.[33]

On October 5, 2020, Plaintiff filed an Application for Injunctive Relief and asked that the Court prevent UTHealth from reissuing Plaintiff's MSPE letter as he believed it would prevent him from matching again.[34] The Court held a status conference on October 14, 2020.[35] The Court proposed terms to resolve the issues raised by Plaintiff in his application.[36] The parties reached an agreement on the issues the next day and Plaintiff withdrew his application.[37] The two addendums were removed from Plaintiff's MSPE letter.[38] The section of the letter that asked "Recipient of any adverse action(s) by the medical school or its parent institution?" now lists the answer "No."[39] Under professional performance it states:

> Mr. [Doe] appeared before the Student Evaluations and Promotions Committed (SEPC) for concerns of professionalism in his interactions with faculty and medical student peers in March 2017. Following his appearance, he was allowed to continue in the program and no adverse action was taken against him. Mr. [Doe] appeared again before the SEPC in December 2019 for new concerns of professionalism in his interactions with staff and faculty. Following his appearance, he was again allowed to continue in the program and no adverse action was taken against him.[40]

UTHealth and the individual Defendants filed the instant Motions to Dismiss on December 23, 2020.[41]

---

[32] *Id.* at 30–38.
[33] *Id.* at 33–34.
[34] *See* Dkt. No. 5.
[35] Dkt. No. 14.
[36] *Id.*
[37] Dkt. No. 20.
[38] *See* Dkt. No. 30-1 at 89–94.
[39] *Id.* at 89.
[40] *Id.*
[41] Dkt. Nos. 29–30.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, a court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of a plaintiff, a plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

A complaint may also be dismissed if the Court lacks subject matter jurisdiction over an action. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

## III.    ANALYSIS

UTHealth argues Plaintiff has no cause of action under Title IX as a matter of law and his Title IX claims should be dismissed pursuant to Rule 12(b)(6).[42] Further, UTHealth argues

---

[42] Dkt. No. 30 at 1.

Plaintiff's First Amendment and breach of contract claims are barred by sovereign immunity and should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[43] In a separate motion, the individual Defendants argue that Plaintiff's §1983 claims are barred by qualified immunity and should be dismissed pursuant to Rule 12(b)(6).[44] The Court will first address UTHealth's Motion to Dismiss before turning to the individual Defendants' Motion to Dismiss.

a.  UTHealth

Plaintiff alleges four causes of action against UTHealth: (1) discrimination under Title IX; (2) retaliation under Title IX; (3) First Amendment retaliation; and (4) breach of contract.[45]

i.  *Discrimination Under Title IX*

UTHealth argues that Plaintiff's factual allegations fail to show how UTHealth discriminated against him because he was a male.[46] Conversely, Plaintiff contends he has pleaded a claim for sex discrimination as he need only show Plaintiff's treatment was grounded in discrimination based on sex.[47]

"Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). A plaintiff can bring a Title IX claim when an institution intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of

---

[43] *Id.*
[44] Dkt. No. 29 at 1.
[45] Dkt. No. 2 at 30–38.
[46] Dkt. No. 30 at 9.
[47] Dkt. No. 35 at 13.

discrimination of which it had actual knowledge. *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999). "To violate Title IX, a funding recipient need not have intended to violate Title IX, but need only have intended to treat [a certain sex] differently." *Poloceno v. Dallas Indep. Sch. Dist.*, No. 3:18-CV-01284-E, 2019 WL 7305216, at *2 (N.D. Tex. Dec. 30, 2019), aff'd, 826 F. App'x 359 (5th Cir. 2020) (citing *Pederson v. La. State Univ.*, 213 F.3d 858, 881 (5th Cir. 2000)).

Plaintiff's complaint does not allege any specific facts that, if proven, would support an inference that UTHealth intentionally discriminated against him because he was a male. Plaintiff's conclusory allegations cannot form the basis for sex discrimination under Title IX.  *See Manley v. Texas S. Univ.*, 107 F. Supp. 3d 712, 726 (S.D. Tex. 2015) (finding conclusory allegations failed to show a law school discriminated against a male applicant because of his sex); *Easley v. Univ. of Texas at Arlington*, 984 F. Supp. 2d 631, 637 (N.D. Tex. 2013) (rejecting a MBA's students claims that he received low grades because of his sex because his complaint failed to show that his school "intentionally treated [him] differently than any female student under the same circumstances."). Even in his response, the most Plaintiff can point to is that UTHealth did not acknowledge that a male staff member also complained of feeling uncomfortable around Plaintiff in addition to the several female staff members who made the same complaint.[48] Plaintiff alleges UTHealth ignored his requests for help in regard to his sexual harassment, but fails to provide evidence that he was ignored *because of his sex*.

The Court construes the allegations in the complaint favorably to Plaintiff and accepts all well-pleaded facts as true, but Plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Accordingly,

---

[48] *Id.* at 14.

the Court finds that Plaintiff fails to state a claim for discrimination under Title IX and recommends that his claim be dismissed pursuant to Rule 12(b)(6).

> ii. *Retaliation Under Title IX*

UTHealth argues that Plaintiff's pleadings do not show that his MSPE letter or SEPC evaluations were retaliatory for his Title IX complaints.[49] Specifically, UTHealth argues that Plaintiff fails to show he suffered an adverse action or show a connection between his protected activity and an adverse action.[50]

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson*, 544 U.S. at 173. "To establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in a protected activity, (2) he suffered an adverse . . . action, and (3) a causal connection exists between the protected activity and the adverse . . . action." *Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015).

As to the first element, Plaintiff claims UTHealth retaliated against him because he complained about sex discrimination, sexual harassment, non-compliance with his right to due process, and UTHealth's actions and inactions.[51] UTHealth does not dispute that Plaintiff engaged in a protected activity. Plaintiff satisfies the first element of his retaliation claim.

As to the second element, Plaintiff states in his complaint that UTHealth retaliated against him by (1) operating outside of normal procedure for his SEPC reviews; (2) forcing Plaintiff to

---

[49] Dkt. No. 30 at 9.
[50] *Id.*
[51] Dkt. No. 2 at 32.

endure SEPC reviews; and (3) amending Plaintiff's MSPE letter.[52] When determining what constitutes an adverse action, the Fifth Circuit takes a "narrow view." *Collins*, 609 F. App'x at 795 (quoting *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)). In the employment context, the Fifth Circuit has held that the following are not adverse actions: "(1) mere accusations or criticism; (2) investigations; (3) psychological testing; (4) false accusations; and (5) polygraph examinations that do not have adverse results for the plaintiff[.]" *Breaux*, 205 F.3d at 157–58 (internal citations omitted).

That UTHealth investigated Plaintiff's professionalism through SEPC evaluations does not rise to the level of an adverse action. *Cf. Pierce v. Texas Dep't of Crim. Just., Institutional Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994) (finding investigations that do not result in action being taken against an individual are not actionable). Plaintiff appeared before SEPC on two occasions and he was allowed to continue his education each time.[53] *But see Doe v. Prairie View A&M Univ.*, No. 4:17-CV-1957, 2018 WL 1947804, at *6 (S.D. Tex. Apr. 25, 2018) (finding suspension of a student, even though the suspension was later rescinded, constituted adverse action).

However, even if the Court found Plaintiff's SEPC evaluations to be adverse actions, Plaintiff fails to show that the evaluations were *because* he complained of harassment. *See Jackson*, 544 U.S. at 174; *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 620 F. App'x 215, 222 (5th Cir. 2015); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011). Plaintiff's first appearance before SEPC was because, as Plaintiff described in his complaint, another student reported him for eating a snack that was set out in an

---

[52] *Id.*
[53] *Id.* at 5, 18; Dkt. No. 30-1 at 2–3, 14, 16.

office.[54] Plaintiff's second appearance before SEPC was due to allegations of unprofessionalism.[55] Plaintiff states in his complaint that the second SEPC evaluation in December 2019 was initiated immediately following his Title IX meeting on October 29, 2019.[56]

There were multiple complaints raised by UTHealth staff as to Plaintiff's behavior. SEPC's responsibility is to assess students who engage "in conduct that calls into question his/her suitability to practice or study medicine or whose performance is otherwise unsatisfactory."[57] SEPC fulfilled its obligation to assess Plaintiff's professionalism in response to the complaints raised by UTHealth staff. In the end, no action was taken against Plaintiff and he continued his education without interruption. Given SEPC's obligations to investigate, Plaintiff's arguments as to timing are unpersuasive.[58] The Court neither finds Plaintiff's SEPC evaluations to be adverse actions nor does the Court find a connection between the evaluations and Plaintiff's complaints.

Plaintiff compares his case to *Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592 (E.D. Tex. 2016).[59] In *Wilkerson*, a professor was found innocent of sexual harassment after an internal investigation, but was ultimately fired for "poor judgment." *Id.* at 603. Plaintiff contends he was treated the same way as the *Wilkerson* professor.[60] The Court disagrees as neither of Plaintiff's SEPC evaluations resulted in termination from his medical school program.

Turning to the addendums made to Plaintiff's MSPE letter, UTHealth maintains that it was

---

[54] Dkt. No. 2 at 5.
[55] *Id.* at 18.
[56] *Id.*
[57] Dkt. No. 30-1 at 25–26.
[58] *See* Dkt. No. 35 at 5–6.
[59] *Id.* at 11.
[60] *Id.*

contractually obligated to update Plaintiff's MSPE letter.[61] While the Court recognizes UTHealth's contractual obligations, the addendums to Plaintiff's MSPE letter contradicted SEPC's decisions. No adverse action was taken against Plaintiff, he continued and completed his medical education, but a section of the letter asked "Recipient of any adverse action(s) by the medical school or its parent institution?" and the answer said "Yes (see below)."[62] Plaintiff raised this issue in his response and argued that it demonstrated how the addendums to his letter were adverse actions.[63] UTHealth did not address the contradiction in its reply. As the Court noted earlier, it is unclear why this section of Plaintiff's MSPE letter stated he received adverse action given that the letter also explained that no adverse action was taken against Plaintiff. The Court acknowledges that, on its face, the original MSPE letter makes it seem as if adverse action was taken against Plaintiff. However, in reality, this was not the case. Plaintiff was allowed to continue his medical education without interruption. Further, UTHealth was contractually obligated to amend Plaintiff's MSPE letter.[64] Given UTHealth's obligations, the Court does not find the addendums to Plaintiff's MSPE letter to be adverse actions.

However, even if the Court found the MSPE addendums constituted adverse actions, the issue becomes whether the MSPE addendums were made *because* Plaintiff complained of harassment. *See Jackson*, 544 U.S. at 174. Plaintiff fails to show a connection between the two. UTHealth is required to provide a full overview of the student's qualifications and must update it as necessary.[65] Plaintiff attempts to make a distinction that, while UTHealth may have been

---

[61] Dkt. No. 30 at 11; Dkt. No. 39 at 3.
[62] Dkt. No. 30-1 at 3.
[63] Dkt. No. 35 at 3.
[64] Dkt. No. 30 at 11; Dkt. No. 39 at 3.
[65] Dkt. No. 30-1 at 78.

obligated to update ERAS, it was not required to update SF Match.[66] ERAS and SF Match are both systems through which medical students apply to residency programs. SF Match was the matching system specifically used by Plaintiff to match with an ophthalmology residency program.[67] The Court agrees with UTHealth that Plaintiff's suggestion that UTHealth be forthright with certain matching systems regarding professional evaluations and not with others would create serious ethical concerns, as well as administrative and logistical issues.[68] Similar to SEPC's evaluations, Plaintiff's arguments as to the timing of these addendums are unpersuasive.[69]

Accordingly, the Court finds that Plaintiff fails to state a claim for retaliation under Title IX and recommends that his claim be dismissed pursuant to Rule 12(b)(6).

### iii.   First Amendment

UTHealth argues that Plaintiff's First Amendment claim is barred by sovereign immunity.[70] "States are immune from suit except by their consent or by express abrogation of their immunity by Congress pursuant to an appropriate constitutional provision." *Sissom v. Univ. of Texas High Sch.*, 927 F.3d 343, 346–47 (5th Cir. 2019) (citing *Alden v. Maine*, 527 U.S. 706, 733 (1999)). UTHealth is entitled to the same sovereign immunity as the State of Texas. *See U.S. ex rel. King v. Univ. of Texas Health Sci. Ctr.-Houston*, 544 F. App'x 490, 495–98 (5th Cir. 2013) (applying the arm-of-the-state analysis that is used to determine Eleventh Amendment immunity to UTHealth); *see also Sissom*, 927 F.3d at 347–49 (concluding UT High School is an instrumentality of the State of Texas that enjoys sovereign immunity).

---

[66] Dkt. No. 35 at 4.
[67] *Id.* at 4; Dkt. No. 34 at 13 n.2.
[68] Dkt. No. 39 at 4.
[69] *See* Dkt. No. 35 at 4–6.
[70] Dkt. No. 30 at 12.

Plaintiff neither identifies how UTHealth has waived it's sovereign immunity nor cites relevant authority to illustrate how his claim overcomes UTHealth's sovereign immunity. Consequently, the Court finds that Plaintiff's First Amendment claim is barred by sovereign immunity and recommends that it be dismissed pursuant to Rule 12(b)(1).

> iv.    *Breach of Contract*

Similar to above, UTHealth argues that Plaintiff's breach of contract claim is also barred by sovereign immunity.[71] Plaintiff did provide a response in defense of his breach of contract claim.[72] "[The] failure to pursue this claim beyond [the] complaint constitute[s] abandonment." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). Moreover, the Court's reasoning as to Plaintiff's First Amendment claim equally applies to Plaintiff's breach of contract claim. Thus, the Court finds that Plaintiff's breach of contract claim is barred by sovereign immunity and recommends that it be dismissed pursuant to Rule 12(b)(1).

### b.   The Individual Defendants

The individual Defendants argue that Plaintiff's §1983 claims are barred by qualified immunity and should be dismissed pursuant to Rule 12(b)(6).[73] Further, the individual Defendants argue that Plaintiff cannot overcome their qualified immunity because (1) he cannot show a violation of a constitutional right and (2) he cannot show that his alleged constitutional right was clearly established.[74] Plaintiff contends the individual Defendants are not entitled to qualified immunity.[75] Plaintiff alleges that the individual Defendants violated "two separate constitutional

---

[71] *Id.* at 14.
[72] *See* Dkt. No. 35.
[73] Dkt. No. 29 at 1.
[74] *Id.* at 9.
[75] Dkt. No. 34 at 3.

rights: (1) his due process rights and (2) his equal protection rights."[76] Specifically, Plaintiff states the individual Defendants deprived him of "his federally protected rights, namely the right to study and be free of sexual harassment and discrimination [on the basis of sex]."[77]

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). This immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Walsh v. Hodge*, 975 F.3d 475, 485 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1693, 209 L. Ed. 2d 468 (2021). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Thus, Courts will not "deny immunity unless existing precedent must have placed the statutory or constitutional question *beyond debate*." *Morgan*, 659 F.3d at 371 (5th Cir. 2011) (internal citation omitted). "Although [Courts] do not require a case 'directly on point . . . there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful.'" *Walsh*, 975 F.3d at 485–86 (citing *Vincent*, 805 F.3d at 547.

"The basic steps of [the] qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Morgan*, 659 F.3d at 371 (internal quotations omitted). "Courts have discretion to decide which prong of the qualified-immunity analysis to address first." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223,

---

[76] *Id.*
[77] *Id.* at 4.

236 (2009)); *see also Walsh*, 975 F.3d at 481.

Here, the Court "must ask whether the law so clearly and unambiguously prohibited his conduct that *every* reasonable official would understand that what he is doing violates the law." *Morgan*, 659 F.3d at 371 (internal quotations omitted). This requires a "robust consensus of persuasive authority [] that defines the contours of the right in question with a high degree of particularity." *Id.* at 371–72 (intention quotations omitted).

Plaintiff states that the individual Defendants "violated his due process rights by denying him proper notice, hearing, and opportunity to address the allegations against him and by including a detrimental addendum to his MSPE letter, thereby, depriving him . . . of a favorable MSPE letter and his opportunity to match with a specialized residency program."[78] Further, Plaintiff states that "it is *impossible* that [the individual Defendants] would not have known the importance" of matching with a residency program and "that they would not have appreciated the detriment a negative addendum" on Plaintiff's MSPE letter would have.[79] What Plaintiff describes is not conduct that violates a law or is unconstitutional. *See Morgan*, 659 F.3d at 371.

Plaintiff acknowledges that his case is different from the standard case in the education context.[80] The Court agrees and notes that this further demonstrates how the law does not clearly and unambiguously prohibit the individual Defendants' conduct. Moreover, the cases cited by Plaintiff in support of his argument are distinguishable and not on-point.

Plaintiff claims "the Fifth Circuit has found that medical residency programs constitute a property interest" and cites to *Papin v. Univ. of Mississippi Med. Ctr.*, 347 F. Supp. 3d 274 (S.D.

---

[78] *Id.* at 9.
[79] *Id.* at 10 (emphasis in original).
[80] *Id.* at 9.

Miss. 2018) for support.[81] *Papin*, a decision from the Southern District of Mississippi, not the Fifth Circuit Court of Appeals, concerns a doctor that was terminated from their residency program. *Id.* at 276. As part of the Court's decision in *Papin*, it found that the doctor had a property interest in their residency program. *Id.* at 282. *Papin*, which is not binding on this Court, is distinguishable as Plaintiff was not terminated from his medical school program or a residency program. It also does not create a right to match with a residency program or a right to a favorable MSPE letter.

Plaintiff also cites to *Univ. of Texas Med. Sch. at Houston v. Than*, 901 S.W.2d 926 (Tex. 1995) for the proposition that "a medical student's MSPE letter and opportunity to match with a residency program are protected liberty interests."[82] In *Than*, a medical student was expelled for academic dishonesty. *Id.* at 928. The Texas Supreme Court found the student had a liberty interest in his graduate education and must be afforded due process prior to expulsion. *Id.* at 930. Again, in the instant case, Plaintiff was not terminated from his medical school program and he was not prevented from completing his medical education. Plaintiff maintains that he was deprived of a favorable MSPE letter and the opportunity to match with a residency program. As with *Papin*, *Than* does not create a right to either of these.

As to Plaintiff's allegations that he was deprived of proper notice and hearing prior to the addendum being added to his MSPE letter, Plaintiff appeared before SEPC twice for professionalism concerns.[83] Each time, Plaintiff was allowed to continue his education and no adverse action was taken against him.[84] The addendums to his MSPE letter only reflected that he

---

[81] *Id.* at 10.
[82] *Id.* at 11.
[83] Dkt. No. 2 at 5, 18; Dkt. No. 30-1 at 2–3, 14, 16.
[84] Dkt. No. 30-1 at 2–3, 14, 16.

appeared before SEPC and did not discuss the details of the allegations against him that led to the SEPC hearings.[85] Plaintiff's due process argument is that the individual Defendants failed to provide the proper notice, hearing, and opportunity to address the allegations against him. Even if true, the mere fact that Plaintiff was reviewed by SEPC is what led to the addendums. Not the substance of the allegations. Thus, the proper notice, hearing, and opportunity that Plaintiff claims to be deprived of would not have changed the SEPC's favorable decision towards Plaintiff that he be allowed to continue his education or Plaintiff's MSPE letter that only reflected the fact that SEPC investigations occurred.

The individual Defendants argue that Plaintiff's complaints regarding how the SEPC evaluations were conducted are complaints against SEPC, not the individual Defendants.[86] Further, the individual Defendants add that they are not part of the SEPC and are not responsible for SEPC's decisions.[87] As to Plaintiff's complaints that his MSPE letter disclosed his SEPC investigations, the individual Defendants reiterate UTHealth's argument that the school was contractually required to disclose Plaintiff's professional evaluations.[88]

Moreover, Plaintiff's various allegations against Defendants Dr. McNeese and Dr. Lahoti[89] fail to show any unconstitutional action.[90] Plaintiff states that Defendants Dr. McNeese and Dr.

---

[85] *Id.* at 2, 89.

[86] Dkt. No. 38 at 6.

[87] *Id.*

[88] *Id.* at 5.

[89] Plaintiff states "[i]n violation of FERPA, Defendant Dr. Lahoti spoke with other individuals about Dr. Doe's educational records after all investigations had been closed and without Doe's knowledge." (Dkt. No. 34 at 13.) FERPA is the Family Educational Rights and Privacy Act of 1974. Plaintiff provides no further information regarding this general allegation in his response or in his complaint.

[90] *See id.* at 6, 12–13.

Lahoti included the detrimental addendum to his MSPE letter.[91] Plaintiff fails to show how Defendants Dr. McNeese's and Dr. Lahoti's conduct rises to the level of an unconstitutional act. As discussed above, Defendants Dr. McNeese and Dr. Lahoti fulfilled UTHealth's contractual obligation to add an addendum to Plaintiff's MSPE letter.

Plaintiff's claims against Defendants Moylan and Obeng center solely around his Title IX complaint. In his response, the only mention Plaintiff makes as to Defendants Moylan and Obeng is that they "precipitated the chain of events that led to the deprivation of Dr. Doe's due process" by failing to investigate his Title IX complaint and that Defendant Moylan closed the Title IX investigation before allowing Dr. Doe to provide comment.[92] Plaintiff fails to show how Defendants Moylan's and Obeng's conduct rises to the level of an unconstitutional act, how the Title IX investigation affected his MSPE letter, or how the Title IX investigation prevented him from matching. The Court is not persuaded by Plaintiff's conclusory statements.

Turning to Plaintiff's equal protection claim, "[t]he Equal Protection Clause directs that persons similarly situated should be treated alike." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Plaintiff argues that the individual Defendants failed to address his equal protection claim and, thus, waived their defense of qualified immunity.[93] The individual Defendants argue that Plaintiff did not properly plead an equal protection claim.[94]

> To state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) "a state actor intentionally discriminated against [him] because of membership in a protected class[,]" or (b)

---

[91] *Id.* at 13.
[92] *Id.*
[93] *Id.* at 3.
[94] Dkt. No. 38 at 6.

> he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

*Gibson v. Tex. Dep't of Ins. – Div. of Worker's Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal citations omitted).

In his complaint, Plaintiff states: "The individual defendants intentionally, willfully, and without justification deprived Dr. Doe on grounds of sex of his rights, privileges, and immunities secured him by the Constitution and the laws of the United States, in violation of 42 U.S.C. § 1983."[95] The individual Defendants argue this language does not mention equal protection and, thus, does not properly plead an equal protection claim. The Court agrees with the individual Defendants. Plaintiff does not properly plead an equal protection claim by simply stating "on grounds of sex."

However, even if Plaintiff properly plead an equal protection claim, the Court disagrees with Plaintiff that the individual Defendants waived their defense of qualified immunity. In their motion to dismiss, the individual Defendants properly raised the qualified immunity defense against all claims against them. *See Basler v. Barron*, No. CV H-15-2254, 2017 WL 784895, at *4 (S.D. Tex. Mar. 1, 2017) (finding qualified immunity defense not waived when raised against all other claims). Further, Plaintiff is not prejudiced as he addressed the defense in his response as if the individual Defendants had previously raised it.[96] *See id.* (finding no prejudice when opposing party previously had the opportunity to address the qualified immunity defense).

Moreover, the individual Defendants argues that, even if the Court found Plaintiff properly

---

[95] Dkt. No. 2 at 33.
[96] *See* Dkt. No. 34 at 3.

pleaded an equal protection claim, Plaintiff's claim fails for similar reasons as to why his due process claim fails.[97] Plaintiff states in his response to the individual Defendants' motion that they "discriminated against Dr. Doe on the basis of sex in two ways: first by allowing sexual harassment of Dr. Doe to continue and second by intentionally discriminating against him."[98] As the Court discussed above, none of the alleged actions by the individual Defendants were unconstitutional. Accordingly, the Court finds that Plaintiff's §1983 claims are barred by qualified immunity and recommends that it be dismissed pursuant to Rule 12(b)(6).

## IV.    LEAVE TO AMEND

A district court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "But leave may be denied when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020) (citing *Smith v. EMC Corp*, 393 F.3d 590, 595 (5th Cir. 2004)). Given that Plaintiff's claims against the individual Defendants are barred by qualified immunity, any amendment would be futile. Further, Plaintiff's claims against UTHealth stem from its obligations to assess complaints against students and to report those assessments to matching systems. Any amendment to those claims, including his First Amendment and breach of contract claims that are barred by sovereign immunity, would be futile. Accordingly, the Court recommends that Plaintiff's requests for leave to amend be denied.[99]

## V.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the individual Defendants'

---

[97] Dkt. No. 38 at 7.

[98] Dkt. No. 34 at 5.

[99] *Id.* at 14; Dkt. No. 35 at 17.

Motion to Dismiss (Dkt. No. 29) be **GRANTED**, UTHealth's Amended Motion to Dismiss (Dkt. No. 30) be **GRANTED**, and the case be **DISMISSED WITH PREJUDICE**.[100]

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on September 28, 2021.

Sam S. Sheldon
United States Magistrate Judge

---

[100] Pending before the Court is also UTHealth's original Motion to Dismiss (Dkt. No. 28) that is identical to its Amended Motion to Dismiss. The Court **RECOMMENDS** that UTHealth's original Motion to Dismiss be **DENIED AS MOOT**. (*Id.*)